ENTERED
01/27/2011

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| 4506 SHERWOOD LANE, LLC | § | CASE NO. 10-32308-H5-11 |
| DEBTOR | § | (Chapter 11) |

## ORDER CONFIRMING CHAPTER 11 PLAN AND
## APPROVING DISCLOSURE STATEMENT

The Debtor, 4506 Sherwood Lane, LLC, filed a Chapter 11 Disclosure Statement and Plan on June 21, 2010, at docket #39. The Debtor filed a First Amended Chapter 11 Disclosure Statement and Plan on November 17, 2010, at docket #77 (the "First Amended Plan"). One creditor, Tax Ease Funding, L.P. ("Tax Ease"), filed objections to the Plan on December 13, 2010, at docket #90. Tax Ease filed a Rule 11 stipulation on January 6, 2011 at docket #103. Based on the Rule 11 agreement Tax Ease withdrew its objection on January 6, 2011, at docket #104. Notice of the hearing on the Disclosure Statement and Plan of Reorganization was sent to all creditors and parties in interest on December 6, 2010. The hearing on the First Amended Plan was initially set for December 15, 2010. The court re-scheduled the December 15, 2010 hearing.

This Court conducted the hearing on the confirmation of the Plan on January 5, 2011.

In January of 2011, Reliance Bank and the Debtor negotiated and reached an agreement on the issues and the language of the plan. Based on the agreement with Reliance Bank, Tax Ease and the City of Houston (water division), the Debtor filed a Second Amended Disclosure Statement and Plan on January 24, 2011, at docket # 108.

No unresolved objections to the disclosure statement nor to the Second Amended Plan are filed with the court.

The Second Amended Plan requires that Reliance Bank set up an escrow for ad valorem tax

payments, that the funds in the tax escrow account cannot be used for any purpose other than the payment of ad valorem taxes on the real property of the Debtor, that the Debtor may use the funds at the appropriate times to pay the ad valorem taxes on the real property of the Debtor. Further, Reliance Bank is bound to the provisions in the Second Amended Plan and the order confirming the Second Amended Plan.

Based on the terms set forth herein and the withdrawal of the objection to confirmation by Tax Ease at docket #104 and the agreement of Reliance Bank indicated by its approval of this Order, this Court has determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. §§ 1129(a) and (b) have been satisfied. This court finds that the creditors and parties in interest have received notice of the hearings set forth above. It is therefore

ORDERED, that the Debtor's Second Amended Disclosure Statement and Plan of Reorganization at docket # 108 filed on January 24, 2011, is approved and confirmed. Copies of the Debtor's Second Amended Disclosure Statement and Plan of Reorganization at docket # 108 filed on January 24, 2011 are attached as Exhibit A hereto. It is further

ORDERED, that the failure of Reliance Bank to comply with the requirements of the tax escrow account shall be a violation of this confirmation order.

Signed:_____**JAN 2 7 2011**_____, 2011

Karen K. Brown
U. S. Bankruptcy Judge

Order Confirming Chapter 11 Plan                                    Page 2

Approved:

*/s/ Reese W. Baker*
Reese W. Baker
Baker & Associates
courtdocs@bakerassociates.net
5151 Katy Freeway, Suite 200
Houston, Texas 77007
713-869-9200
Fax 713-8696-9100
Attorney for 45065 Sherwood Lane, LLC


*/s/ Simon Mayer*     (By permission)
Simon Mayer
HUGHES WATTERS ASKANASE, LLP
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
Telephone (713) 759-0818
Telecopier (713) 759-6834
Attorney for Reliance Bank

Case 10-32308    Document 91    Filed in TXSB on 01/25/11    Page 1 of 24

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| 4506 SHERWOOD LANE, LLC | § | CASE NO. 10-32308-H5-11 |
| DEBTOR | § | (Chapter 11) |

### DEBTOR'S SECOND DISCLOSURE STATEMENT
### AND PLAN OF REORGANIZATION

4506 Sherwood Lane, LLC (the "Debtor") proposes this Second Amended Disclosure Statement and Plan of Reorganization (the "Plan") pursuant to §§ 1121 and 1125 of the Bankruptcy Code.

### INFORMATION REGARDING THE DEBTOR

A.    **The Debtor**.  4506 Sherwood Lane, LLC, is a Texas limited liability company whose business address is 4506 Sherwood Lane, Houston, TX 77092.  The Debtor owns and manages an apartment complex known as Sherwood Lane.  The property is located at 4506 Sherwood Lane (collectively, the "Property" or "Sherwood Lane").  The Property has 60 units.  The Property was constructed in 1971.

B.    **Brief History of the Debtor, Ownership, and Cause of the Debtor's Chapter 11 Filing**.  The Debtor was formed on July 14, 2008. Gary Arnold ("Arnold")(27.5% owner), Angelica Salas ("Salas")("27.5% ), and Michael Watson ("Watson")(45%) were the original owners of the Debtor.  The Debtor acquired the Property on or about September 5, 2008.

Arnold and Salas provided approximately $300,000 for the down payment for the purchase of the Property.  The funds were provided for the benefit of the Debtor. Arnold and Salas tendered the $300,000 to the title company at the time of the acquisition of the Property by the Debtor.  Salas signed the loan documents on behalf of the Debtor.

After the acquisition of the Property by the Debtor, Watson assigned part of his interests to James N. Stephens ("Stephens") and Yao Chung Liu ("Lui").  Stephens later conveyed his ownership interests to Lui; Lui then transferred his interests to Arnold; and Watson transferred his interests to Salas. At the time of the filing, the Debtor was owned by Arnold and Salas.  Arnold and Salas are

Case 10-32308   Document 91   Filed in TXSB on 01/25/11   Page 2 of 24

married.

During the time period that Watson was an owner, he was also a managing member. Even though Watson did not own a majority of the Debtor, Watson took actions that adversely affected the Debtor.

When the Debtor purchased the Property, Reliance Bank ("Reliance"), the lender, set up an escrow for repairs to the Property. The escrow amount was $168,000. One of the conditions of the escrow was that the escrow funds of $168,000 would not be released until the repair work was performed. Watson was to provide the $168,000 for repairs to the Property until all repairs were complete and Watson then would be reimbursed for the repairs from the escrow account at Reliance.

After the Debtor acquired the Property, Watson engaged PMR Companies, LLC ("PMR") as the property manager for the Property. PMR acted as the property manager until approximately June of 2009. The Debtor terminated PMR.[1] After June of 2009, the Debtor did not have funds to engage a property manager.

Shortly after the purchase of the Property by the Debtor, Hurricane Ike hit the Gulf coast. The Property sustained substantial damage. Due to the damage from Ike, the occupancy of the Property dropped significantly.

Arnold submitted a claim for damage from Hurricane Ike. The insurance claim was not settled nor had the Debtor received any funds for Hurricane Ike damage on the date of the filing of the chapter 11 case, even though Reliance had received approximately $50,000 in insurance funds in mid 2009.[2]

On or about January 12, 2009, Watson borrowed approximately $168,000 from Paula Angenendt ("Angenendt"). Watson prepared and executed a promissory note and a deed of trust lien from the Debtor to Angenendt for the $168,000. Watson informed Angenendt that the funds of $168,000 were to be used for the Property. The deed of trust lien was filed in the real property

---

[1]

The Debtor believes that PMR did not properly manage the Property.

[2]

Reliance refused to release any insurance proceeds on the Property until September of 2010.

Case 10-32308   Document 109   Filed in TXSB on 01/25/11   Page 3 of 24

records of Harris County, Texas. The deed of trust lien is a second lien on the Property to the deed of trust lien of Reliance.

To the knowledge of the current ownership of the Debtor, the funds from the loan from Angenendt were not placed into a bank account of the Debtor. Watson allegedly maintained the funds in a bank account in his name or the name of one of his companies.

Watson did not provide funds for the repairs to the Property. As a result of the failure of Watson to provide funds for the repairs to the Property, Reliance refused to release the $168,000 of funds in the escrow.

As a managing member, Arnold engaged contractors to start the needed repairs to the Property. Arnold had the driveway removed and replaced with a new concrete driveway. In addition, approximately 11 air conditioning units were installed. After Arnold had the repairs completed, Reliance refused to release the funds since all the repairs had not been completed.

The contractor that performed the services for the Debtor was not paid and informed the Debtor that a lien would be placed against the Property and that actions would be taken to foreclose the mechanics lien. As a result of the lien claims and also to prevent lien foreclosures, Reliance agreed to restructure the loan with the Debtor. On August 14, 2009, Reliance and the Debtor executed a modification agreement of the loan on the Property. The restructured loan had the term shortened to one year. The remaining escrow funds were terminated and not made available to the Debtor. The Debtor did not have the remaining funds to repair the Property.

During the summer of 2009, Arnold inquired as to the status of the $168,000 obtained from Angenendt to be used for repairs to the Property. Watson could not account for the $168,000 for the repairs to the Property. Due to the conflict over the $168,000 of repair funds, Watson agreed to assign his interest in the Debtor to Salas. In the summer of 2009, Watson transferred his interest to Salas and no longer had an ownership interest in the Debtor.

After the modification agreement between the Debtor and Reliance in August of 2009, and after Watson was no longer an owner in the Debtor, Arnold and Salas provided significant personal funds for repairs to the Property. Arnold and Salas provided approximately $150,000 used by or on

Case 10-32308   Document 109-1   Filed in TXSB on 01/25/11   Page 4 of 24

behalf of the Debtor for repairs to the Property.

After the Debtor submitted the insurance claim, the claim was denied. The Debtor then engaged another law firm to represent the Debtor to pursue the Hurricane Ike claim.

The Debtor experienced significant adverse events that have caused the condition of the Property to deteriorate and for the occupancy of the Property to be severely and adversely impacted. Arnold and Salas have attempted to fund the Debtor for repairs and operational costs but did not have sufficient funds to pay all of the necessary costs and expenses. The chapter 11 filing was due to the above issues.

C.    **Assets of the Debtor**. The assets of the Debtor at the time of the bankruptcy filing are set forth in detail on the schedules of the Debtor filed with the Court. The principal asset of the Debtor is the apartment complex known as Sherwood Lane. The current managers of the Debtor have listed other known assets of the Debtor as of the filing date in the schedules of assets of the Debtor as filed with the court.

The Debtor has insufficient information as to the prior operations of the Debtor when the Debtor was managed by PMR. Based on information available, the Debtor believes that PMR mismanaged the Property. The Debtor is unable to make any further assessment due to the lack of information on the operations of the Debtor before the summer of 2009. If PMR mismanaged the Property, the Debtor may have a claim against PMR.

The Debtor has insurance proceeds of approximately $125,000 that are to be made available to the Debtor by Reliance for repairs to the Property. Part of the repair funds have been released by Reliance and the remaining funds are still being held by Reliance.

The Debtor also has claims against Watson for the loss of the funds for the repairs to the Property and other claims. The Debtor is investigating a possible lawsuit against Watson. The Debtor may pursue claims against Watson.[3]

---

[3]

To the extent that claims against PMR and Watson are not fully set forth in Schedules of the Debtor, the Debtor does believe that claims against PMR and Watson may exist and intends to more fully investigate and possibly pursue such claims. The statements in this Disclosure Statement and Plan shall be considered as amendments to the schedules of assets and liabilities of the Debtor.

Case 10-32308   Document 109-1   Filed in TXSB on 01/25/11   Page 55 of 124

The Debtor experienced a long delay in obtaining use of the repair funds. The long delay caused further erosion of the Property and additional losses to the Property. The Debtor may have claims against Reliance for the delay in releasing the use of insurance proceeds. The Debtor is reviewing possible claims against Reliance.

D.      **The Source of the Information Contained in this Disclosure Statement.** All information in this Plan and Disclosure Statement has been submitted by the Debtor unless otherwise indicated. The current management of the Debtor is comprised of Arnold and Salas. Arnold has been designated as the managing member for purposes of the chapter 11 case. The current management company, Stockett Properties, LLC has also provided the financial information used in this plan and disclosure statement.

E.      **Present Condition of Debtor and Post-Petition Operations of the Debtor.** The Debtor owns and operates the apartment complex known as Sherwood Lane. The post-petition financial operations of the Debtor are set forth in the monthly operating reports filed with the Bankruptcy Court. Attached as Exhibit B are the most recent two of the Debtor's Monthly Operating Reports, which set forth the Debtor's cumulative post petition operations.

As of October 2010, the occupancy was approximately 61%; however, the amounts paid by the tenants are much lower than reasonable rates for repaired units.[4] The Debtor believes that the actions of Watson, PMR and Reliance contributed to the decrease in the occupancy of the Debtor. Due to the inability to obtain insurance funds from Reliance which would have allowed for repairs to the Property, the occupancy of the Property has been adversely affected. The Debtor has very recently obtained the ability to use insurance proceeds of approximately $125,000 to repair the Property. The Debtor had anticipated that the funds for repairs would have been available a significant time in the past.[5] The funds were not made available to the Debtor until September 30,

---

[4]

The rental collections are low relative to the occupancy. Many of the units had significant damage due to problems caused by hurricane Ike and resulting damage due to non-repair.

[5]

The Debtor had available approximately $50,000 in insurance funds for repair of the Property as early as the summer of 2009. However, Reliance Bank refused to release the funds until very recently. As a result of the refusal to release the $50,000 in funds, the Debtor experienced a delay

2010.[6]  As a result, the repairs are months behind the anticipated completion.

The current property management company for the Debtor believes that upon completion of the repairs to the Property from the insurance proceeds, the occupancy of Sherwood Lane can reach over 80% and remain above 80%

*Hurricane Ike Damage.*  During the fall of 2008, the project had damage from Hurricane Ike. The hurricane damage affected most of the units.[7]  A claim was submitted to the insurance carrier. The insurance proceeds are currently held by Reliance pending disbursement for repairs.

The Property has been in need of significant repairs from Hurricane Ike.  The uncompleted repairs caused significant problems at the Property.  Multiple units could not be occupied or used due to leaking roofs and other conditions.  Reliance finally agreed to release funds for the repairs to the Property after holding repair funds for over a year.

*Attached as Exhibit A are projections of the Debtor which demonstrate the feasibility of this Plan.*  The attached projections indicate that the income of the Debtor will increase.  The Debtor is anticipating that the increase in income from new tenants may take between 3 to 6 months. The basis for the expectation of the increase in income is from the completion of the repairs with the insurance proceeds and increasing the quality of the tenants in the repaired units so that a higher percentage of tenants are paying on a consistent basis.

F.  **Anticipated Future of the Debtor and Management**.  The Debtor intends to continue in business and pay its debts in accordance with this plan.  Based on the projected increase in occupancy after completion of the repairs to the Property, the Debtor anticipates that it will be able

---

in obtaining the remaining funds of approximately $75,000.  The Debtor may have claims against Reliance for the wrongful refusal to release the repair funds.  To the extent that claims against Reliance are not fully set forth in Schedules of the Debtor, the Debtor does believe that claims against Reliance may exist and intends to more fully investigate and possibly pursue such claims. The statements in this Disclosure Statement and Plan shall be considered as amendments to the schedules of assets and liabilities of the Debtor.

[6]

The Debtor was not able to start repairs to the Property until September 22, 2010.

[7]

Eighteen (18) units were heavily damaged by the hurricane.

Case 10-32308   Document 91   Filed in TXSB on 01/25/11   Page 7 of 24

to pay the amounts as set forth in this plan and generate sufficient funds for ongoing operations. The condition of the Property will be significantly improved after the repairs are completed. Due to the negative operation of the Property over the past year or more, the Property will need a period of time to regain its prior occupancy levels and regain the trust of the tenants.

The management of the Debtor shall be conducted by Arnold. Stockett Properties will continue to act as the management company for the Property after confirmation and will receive its contractual management fees.

G.     **Summary of Scheduled Claims**. The Debtor's schedules reflect claims against the Debtor and the respective priorities. The claims timely filed are as follows[8]:

| Claim # | Creditor | Amount | Collateral |
|---------|----------|--------|-----------|
| 1 | CenterPoint Energy | $13,009.27 * | Unsecured |
| 2 | Gulf Coast | $254.68 | Unsecured |
| 3 | PPG Architectural Finishes | $662.08 | Unsecured |
| 4 | Harris County | $74,706.40 | Secured |
| 5 | Reliance Bank | $1,011,704.77 | Secured |
| 6 | Internal Revenue Service | $39,093.00 * | Priority |
| 7 | O'Conner and Associates | $124.00 | Unsecured |
| 8 | Chase Bank | $11,328.41 | Unsecured |
| 9 | Direct Energy | $7,776.38 | Unsecured |
| 10 | City of Houston, PWE | $7,543.28 | Unsecured |
| 11 | Presto Maintenance | $1,478.14 | Unsecured |
| 12 | Tax Ease Funding, LP | $42,924.64 | Secured |
| 13 | Mueller Water Conditioning | $,3000.00 | Unsecured |
| | | | |

* Debtor will object to these claims. Debtor may object to the other claims.

---

[8]

The bar date was July 26, 2010.

Case 10-32308   Document 108   Filed in TXSB on 01/25/11   Page 8 of 24

The Debtor has scheduled unsecured claims that total approximately $212,681  See Exhibit D attached hereto. As of November 15, 2010, the filed unsecured claims are $45,176.24.  **The Debtor will not make payments to any creditor listed on Schedule F that did not timely file a proof of claim.**

H.     **Liquidation as an Alternative to the Proposed Plan.** The Debtor is proposing a Chapter 11 Plan of Reorganization to re-pay its debts.  However, if the Plan is not approved by the Creditors and confirmed by the Court, the primary alternative for the Debtor is liquidation under chapter 7 or dismissal of the case.  If the Debtor is required to liquidate under chapter 7, it is very likely that there will be no funds available to pay unsecured creditors.  The value of the Property is less than the amounts owed to the secured creditors Harris County, Tax Ease and Reliance.  The differences between this Plan and a chapter 7 liquidation are significant.  In a chapter 7 liquidation, the secured creditors, Harris County, Tax Ease and/or Reliance will likely foreclose on the Debtor's assets to satisfy their secured claims. There are no material assets of the Debtor that are free and clear of liens and security interests of Harris County, Tax Ease and/or Reliance.  If there is any remaining property that is not subject to the liens and security interests of Harris County, Tax Ease and/or Reliance these assets would be sold by the trustee for their current fair market value, which is not a material amount.  Unsecured creditors will likely receive no payments in a chapter 7 liquidation after payment of claims in higher priority classes and costs likely to be incurred in connection with selling the Debtor's asset. The appointment of a Trustee by the Court also would result in additional administrative costs.

If this case is dismissed without a plan of reorganization, then the likely result will be a foreclosure by Harris County, Tax Ease and/or Reliance under their liens and security interests.  A foreclosure by Harris County, Tax Ease and/or Reliance of their liens and security interests will leave nothing for any other creditors.

See Exhibit C for a liquidation analysis.

**LIQUIDATION UNDER CHAPTER 7 OR DISMISSAL OF THIS CASE IN ALL LIKELIHOOD WILL PRODUCE NO DISTRIBUTION TO ANY UNSECURED**

Case 10-32308    Document 101    Filed in TXSB on 01/25/11    Page 9 of 24

CREDITORS.

      I.     **Estimated Administrative Expenses**. The Debtor estimates administrative expenses including professional fees and expenses, and pre-confirmation US Trustee quarterly fees for this case to be approximately $45,000. The administrative expenses are comprised of attorneys fees (estimated amount of $43,000), U. S. Trustee quarterly fees, and a reserve for other possible administrative expenses (estimated for unknown claims at $2,000).

      J.     **Avoidance and Contested Claims.** The Debtor has reviewed all payments in excess of $5,475 made within 90 days of the filing date. Debtor does not believe that there are any preferential transfers or fraudulent transfers.

      K.     **Summary of Non-Bankruptcy and Bankruptcy Litigation**. The Debtor may contest the valuation of its real and personal property as valued by the Harris County Appraisal District. The results of the contest may affect the payments to the secured tax creditors. The Debtor was the plaintiff in an action to collect insurance proceeds from Hurricane Ike. The litigation is completed and the amounts to be paid were finalized prior the filing of the chapter 11 case.

      The Debtor is reviewing possible claims against PMR, Watson and Reliance. The Debtor may file legal actions against PMR, Watson and/or Reliance for damages against the Debtor.

      L.     **Risks Posed to Creditors**. The major risk to creditors is the uncertainty of the Debtor's future business and its ability to generate sufficient revenues to pay the claims. The occupancy and rental income of Sherwood Lane will be a significant determining factor in the successful operation of the Debtor.

      M.     **Tax Ramifications.** An analysis of the federal income tax consequences of the Plan to creditors requires a review of the Internal Revenue Code of 1986, as amended, the Treasury regulations promulgated thereunder, judicial authority, and current and administrative rulings and practice. The federal income tax consequences to any particular creditor may be affected by the nature of the taxable entity. There may also be state, local, or foreign tax considerations applicable to each creditor. Each creditor is urged to consult his, her, or its accountant or tax lawyer to determine the effect of this Plan upon his, her, or its claim.

N.     **Affiliate Relationships**. The Debtor is owned by Gary Arnold (47.5% interest) and Angelica Salas (52.5%). Gary Arnold and Angelica Salas are owners of another limited liability company, Ground & Pound LLC. ("Tiffany Oaks"). Tiffany Oaks owns an apartment complex known as Tiffany Oaks. Gary Arnold owns 25% of Tiffany Oaks. Tiffany Oaks has recently confirmed a chapter 11 bankruptcy plan in a case in the United States Bankruptcy Court for the Southern District of Texas under case number 09-37609-H5-11. Tiffany Oaks bankruptcy case is in the same court with the same judge as this case. The debtor in Tiffany Oaks is in the process of closing the chapter 11 case after confirmation of its chapter 11 plan. Both properties are currently managed by Stockett Properties.

O.     **Definitions.** "Effective Date" shall be the date that is fifteen (15) days after a final and non-appealed order is entered confirming the Debtor's chapter 11 plan of reorganization.

P.     **Additional Disclosures Requested by Certain Creditors.** Reliance Bank and Tax Ease have requested that the Debtor provide additional information for creditors. The following are additional disclosures:

a.     The Debtor's revenues are currently approximately $8,000 per month. After completion of repairs to the Property, the Debtor will have units that have otherwise been unusable or units that have been rented at rates well below market rates. The Debtor has substantially completed many of the repairs and has already been able to rent units that have previously been unoccupied. The Debtor's anticipated rental and occupancy after completion of repairs is shown on Exhibit E. The increase in revenue will result in increased rental of units and also increased rental rates in units. With the repairs to the Property completed, the Debtor will be able to increase rental rates. The Debtor believes that the projected income in Exhibit A is feasible and achievable.

b.     The total rents received from each apartment unit on the Property, the rent rates for each apartment unit and the Property's occupancy rates for the month of October 2010 are set forth on Exhibit E.

c.  The projected rent rates and occupancy rates for the Property that are necessary to make the plan feasible over the term of the Debtor's Plan are set forth on Exhibit E.

d.  Debtor's 2009 financial information is set forth in the 2009 income tax return. The Debtor has also attached as Exhibit F the net income from operations for 2009. The Debtor has no other prepared financial statements for 2009.

e.  The insurance proceeds provided sufficient funds to repair the Property to operating condition. The repairs that have not been covered by the insurance proceeds include repairs to the swimming pool estimated at approximately $6,000 (the Debtor is closing the pool for the winter so the costs are not needed at this time)[1], and repairs to units 58 and 60 estimated at approximately $5,000. Gary Arnold will provide most of the materials for the repair of units 58 and 60. The roof has been patched; however, the roof may need to be replaced in the future. The possible cost to replace the entire roof may be $250,000. Debtor has not obtained an actual estimated cost to repair the entire roof since the replacement of the roof will be in several years and the cost in several years is currently unknown.

f.  The projected total costs of the repairs to the Property are $127,000, the insurance proceeds available to the Debtor.

g.  The estimated projected completion date of the repairs to the Property is December 17, 2010.

h.  The compensation that is projected to be paid for insiders over the entire term of the Debtor's Disclosure Statement and Plan is limited to the use of one unit. Gary Arnold will continue to assist with management and supervisory services on the Property. His principal objective is to insure the continued operation of the Property. He will assist in completing repairs to units 58 and 60. He does not anticipate receiving any payment for his services during the term of the plan.

i.  The basis of the secured claim of Paula Angenendt in Class 5 of the Debtor's Plan

---

[1]

The Debtor may fill in the pool in the future depending on the costs and the benefit.

Case 10-32308   Document 110   Filed in TXSB on 01/25/11   Page 12 of 24

is based on the lien granted by Watson to Angenendt.[2]

## DEBTOR'S PLAN OF REORGANIZATION

**Plan Concept**. The Debtor's plan is reorganizing in nature. The Debtor will continue to operate its business and pay its creditors in accordance with the priorities under the Bankruptcy Code.

The Plan provides for the division of Claims into nine (9) classes. Each of the claims in each Class shall be treated in the manners and methods described below:

A.   **Class 1. Administrative Claims as of the Effective Date**. Class 1 consists of the Allowed Claims entitled to priority under § 507(a)(1) of the Bankruptcy Code, including the fees for services rendered and expenses incurred through the Effective Date by Debtor's counsel and other professionals appointed by the Court for the Debtor, the U.S. Trustee's pre-confirmation quarterly fees, and any other administrative expenses[3]. The estimated amount of claims in Class 1 including professional fees and U.S. Trustee fees is approximately $40,000. Except as provided below, each Creditor in Class 1 shall be paid in cash on the Effective Date if the Creditor's Claim has matured or been approved or allowed by the Court, if such approval or allowance is required. Fees and expenses for counsel for the Debtor will be paid at an agreed amount after confirmation. To the extend income is available, the budget projects payments of approximately $1,500 per month to counsel for the Debtor until the fees and expenses are paid.[4] Counsel for the Debtor has agreed to accept payments over an extended time period in lieu of payment at confirmation. All fees for services rendered and expenses incurred after the Effective Date by court-appointed counsel and other

---

[2]

[3] See section B for further information regarding the lien of Paula Angenendt.

The only other known administrative expense is from the City of Houston for water. The initial claim of $12,676.52 is reduced by two deposits ($2,650.00 and $6,825.00). Thus, the amount of the administrative expense claim is $3,201.52 for usage. The Debtor has agreed with the City of Houston to pay the back charges of approximately $351.91, and an initial additional payment of $800. Thereafter, the current bill will be paid with an additional $500 until the arrearages have been paid. [4] There are no other known administrative expenses at this time.

Counsel for the Debtor has agreed to work with the Debtor on payment of fees and expenses. The Debtor may grant an interest in the Debtor to counsel as security for payment of the fees.

---

professionals for the Debtor shall be paid by the Debtor in the ordinary course of its business without the necessity of filing fee applications or seeking approval or allowance of the Court. The Debtor will pay the administrative expenses to the City of Houston by the payment of $500 per month after the Effective Date until the administrative amount is paid in full. The reorganized debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Quarterly fees owed to the United States Trustee pre-confirmation will be paid on the Effective Date of the Plan. After confirmation and until this case is closed by the court, the reorganized debtor shall pay quarterly fees to the United States Trustee as they accrue and serve on the United States Trustee a quarterly financial statement or affidavit of quarterly disbursements. See proposed payments to Class 1 in the projections contained in Exhibit A.

After confirmation, counsel for the Debtor, Baker & Associates, may obtain an equity interest in the Debtor in consideration of all or part of the legal fees owed to the Firm or the Debtor may pledge an interest in the Debtor to secure payment of the legal fees and expenses to Baker & Associates. Such actions will not affect payments to creditors as provided herein. Class 1 is impaired.

B.   **Class 2. Secured Claim of Reliance.**   Class 2 consists of the Secured Claim of Reliance. On September 5, 2008, the Debtor executed and delivered a *Promissory Note* (the "Reliance Note"), in the original principal amount of One Million, One Hundred Thirty-Nine Thousand, One Hundred Thirty-Nine Dollars and No Cents ($1,139,139.00), payable to Reliance. The Reliance Note is secured by a lien on the Property and an absolute assignment of rents, as evidenced by a *Deed of Trust, Security Agreement and Financing Statement* filed in the Official Public Records of Real Property of Harris County, Texas (File No. 20080471211) and *Absolute Assignment of Rents* filed in the Official Public Records of Real Property of Harris County, Texas (File No. 20080471212) (collectively the "Reliance DoT"). On August 14, 2009, the Debtor and Reliance executed a *Modification Agreement*, effective August 5, 2009 (collectively, with the Reliance Note and Reliance DoT, the "Reliance Loan Documents").

Case 10-32308   Document 110   Filed in TXSB on 01/25/11   Page 14 of 24

The proof of claim filed by Reliance stated that the amount due under the Reliance Note as of the petition date, March 23, 2010, was $1,011,704.77. The Debtor's plan will pay a principal sum of $1,060,000.00 to Reliance (the "Reliance Debt"), together with, interest on the unpaid balance at an interest rate of 6.75% per annum. The Reliance Debt will be amortized for 25 years with monthly payments of principal and interest of $7,323.00. The first payment will be due on April 15, 2011, with payments of the same amount due on the same day of each month thereafter. All payments will be made by electronic funds transfer so they are received by Reliance by 12:01 p.m. on their respective due date. All amounts due on the Reliance Debt will be due and payable 24 months from April 15, 2011. Failure to make a timely payment by the respective due date shall constitute a breach of a monetary covenant under the terms of the Reliance Loan Documents. Notwithstanding the terms of the Reliance Note stating that it is payable on demand, Reliance shall not demand payment of the Reliance Note prior to April 15, 2014 unless an event of default has occurred and is not timely cured pursuant to the appropriate cure provisions in the Reliance Loan Documents.

No interest will accrue on the Reliance Debt until payments commence to Reliance on April 15, 2011.

Reliance shall retain all of its liens and security interests pursuant to the DoT to secure repayment of the Reliance Debt. All provisions of the Reliance Loan Documents shall remain in full force and effect with the same terms and conditions as contained therein, except as modified by this Plan.

For the first 24 months of the Plan beginning April 15, 2011, the Debtor will provide Reliance with copies of all of the Debtor's bank statements for the prior month. For example, on June 15, 2011, the Debtor shall provide copies of all of its bank statements for the month of May 2011. If the Debtor fails to provide the bank statements to Reliance by the 15th of the month, Reliance shall provide written notice by email to the Debtor at sagacoatings@gmail.com and Debtor's counsel at Reese.Baker@bakerassociates.net. Any such notice provided to the Debtor and Debtor's counsel is effectively delivered as of the

date of the email. The Debtor shall have ten (10) days after the effective delivery of the notice (the "Extension Period") to provide the respective bank statements to Reliance. Failure to deliver the bank statements after the Extension Period shall constitute a Bank Statement Default. The occurrence of three Bank Statement Defaults, whether consecutive or not, over the course of the first 24 months of the Plan beginning April 15, 2011 shall constitute a default under the terms of the Reliance Loan Documents.

In the alternative, the Debtor shall authorize Debtor's bank and shall cause such bank to send copies of the Debtor's bank statements to Reliance on a monthly basis. If after proper authorization by the Debtor, the Debtor's bank fails to provide Debtor's bank statements to Reliance, such failure shall constitute breach of a non-monetary covenant under the Reliance Loan Documents.

The Debtor shall escrow funds for the payment of property taxes. Reliance shall open an escrow tax account for the Debtor and shall designate the account as an escrow tax account (the "Property Tax Escrow Account"). For the first 28 months of the Plan beginning January 15, 2011, the Debtor shall electronically deposit funds in the Property Tax Escrow Account for the payment of property taxes. The Debtor shall not be required to deposit funds in the Property Tax Escrow Account on a monthly basis. However, the amount in the Property Tax Escrow Account must meet the following quarterly parameters. The amount contained in the Property Tax Escrow Account on April 15, 2011 shall equal 10% of the amount of 2010 tax year's property taxes. The amount contained in the Property Tax Escrow Account on July 15, 2011 shall equal 33% of 2010 tax year's property taxes. The amount contained in the Property Tax Escrow Account on October 15, 2011 shall equal 65% of the 2010 tax year's property taxes. The amount contained in the Property Tax Escrow Account on January 20, 2012 shall equal 100% of the 2010 tax year's property taxes. The amount contained in the Property Tax Escrow Account on April 15, 2012 shall equal 20% of the amount of 2011 tax year's property taxes. The amount contained in the Property Tax Escrow Account on July 15, 2012 shall equal 45% of 2011 tax year's property taxes. The amount contained in the Property Tax Escrow Account on October 15, 2012 shall equal 70% of the

2011 tax year's property taxes. The amount contained in the Property Tax Escrow Account on January 20, 2013 shall equal 100% of the 2011 tax year's property taxes. Failure to escrow taxes as outlined above shall constitute a breach of a monetary covenant under the terms of the Reliance Loan Documents.

The funds deposited into the Property Tax Escrow Account shall only be used for the payment of property taxes on the Property. Reliance shall not use any funds in the Property Tax Escrow Account for setoff or any other purpose other than the payment of the property taxes on the Property. Use of the funds in the Property Tax Escrow Account for any other purpose shall constitute a violation of the Plan and the order confirming the Plan. The Debtor may direct that the funds in the Property Tax Escrow Account be paid for property taxes. Reliance shall release funds for payment of property taxes upon written notice from the Debtor. If the Debtor does not direct Reliance to pay taxes on or before January 25, 2012, Reliance shall use the funds in the Property Tax Escrow Account to pay the property taxes. If the Debtor does not direct Reliance to pay taxes on or before January 25, 2013, Reliance shall use the funds in the Property Tax Escrow Account to pay the property taxes. If legal action is required to obtain compliance by either party with this paragraph, then the non-prevailing party shall be responsible for the prevailing party's reasonable and necessary attorneys fees, costs and expenses.

For the first 24 months of the Plan beginning April 15, 2011, the Debtor shall provide Reliance with (i) a monthly income statement, including the Debtor's monthly revenues and expenses, in the form Debtor's management company provides to the Debtor or in the form as it is maintained by the Debtor, and (ii) monthly rent rolls specifically including any rental unit delinquencies. Failure to provide the above described monthly documentation shall constitute a breach of a non-monetary covenant under the terms of the Reliance Loan Documents.

Gary Arnold and Angelica Salas shall each enter into new personal guaranties for the Reliance Debt (the "Guaranties"). Gary Arnold and Angelica Salas shall provide Reliance with current personal financial statements. Reliance shall not pursue collection on the

Case 10-32308   Document 101   Filed in TXSB on 01/25/11   Page 17 of 24

Guaranties from either Gary Arnold or Angelica Salas unless and until either (i) an event of default has occurred and has not been timely cured pursuant to the Reliance Loan Documents or (ii) upon the maturity of the Reliance Debt, such indebtedness is not satisfied.  Reliance shall non-suit Gary Arnold and Angelica Salas without prejudice from the pending adversary proceeding under case 10-3514.

The Debtor and Reliance will execute amendments to the loan documents to evidence the provisions of this Plan.

Class 2 is impaired.

**Class 3.   Secured Ad Valorem Property Tax Claim of Harris County / City of Houston and HISD (and other taxing entities).**  Class 3 consists of the secured *ad valorem* property tax claims of Harris County/City of Houston for the tax years 2009 and 2010.  The amount of the proof of claim filed by such creditor is $74,706.40.  The Debtor will pay  interest only on the Class 3 claim for twelve months from the Effective Date.  Thereafter, the Debtor will pay the Class Three claim in equal monthly payments over a period often (10) years.  The interest rate on the Class 3 claim will be twelve percent (12%) per annum. Class 3 includes taxes for both personal and real property taxes. The Debtor has contested, or will contest, the valuation of the real and personal property and equipment.

Class 3 is impaired.[5]

1. **Class 4. Secured Claim of Tax Ease Funding, L.P. ("Tax Ease")**  Tax Ease Proof of Claim No. 12 is supported by a promissory note executed by the Debtor on June 25, 2009, in the original principal amount of $43,977.85 (the "Promissory Note"). As of March 23, 2010 (the "Petition Date"), Tax Ease alleges that the amount owing under the Promissory Note is $42,924.64.  The Promissory Note is secured by a Deed of Trust and Assignment of Leases and Rents dated June 25, 2009, a Tax Lien Transfer Affidavit and Certificate of Payment of Taxes Paid by Another Person and Transfer of Lien Under Texas Tax Code Section 32.06 (the "Security Documents"). Because Tax

---

[5]

The Debtor may contest in the appropriate forum the values of the real property and personal property.  If contested, the payments to the taxing authorities will be adjusted and paid based on the final valuations and tax amounts.

Ease is oversecured, the amounts owed to Tax Ease relating to Tax Ease Proof of Claim No. 12 are entitled to bear interest at the rate of interest provided for under the Promissory Note from March 23, 2010 through the Effective Date and to accrue costs, charges and fees pursuant to 11 U.S.C. § 506(b). Tax Ease shall file an application requesting allowance of any amounts under 11 U.S.C. § 506(b) relating to Tax Ease Proof of Claim No. 12 within fourteen (14) days following entry of an order confirming this Plan. The Debtor shall file any objection to Tax Ease Proof of Claim No. 12 or Tax Ease's application under 11 U.S.C. § 506(b) relating to Tax Ease Proof of Claim No. 12 on or before thirty (30) days following entry of an order confirming this plan. If no such objection is filed, Tax Ease Proof of Claim No. 12, and all amounts requested under Tax Ease's 11 U.S.C. § 506(b) relating to Tax Ease Proof of Claim No. 12 shall be deemed to be fully and finally allowed and such amounts shall constitute the "Allowed Tax Ease Claim". If an objection is filed, the Bankruptcy Court shall determine the amount of principal, interest, costs, charges and fees pursuant to 11 U.S.C. § 506(b) or as otherwise provided in the Promissory Note and the Bankruptcy Court's determination, once becoming a final order, shall constitute the "Allowed Tax Ease Claim." Any Allowed Tax Ease Claim shall be paid as follows:

1.The "maturity date" of the Promissory Note shall be changed to the date which is the first day of the calendar month which occurs one hundred thirty-two (132) months after the Effective Date.

2.The total amount owing under the Promissory Note as of the Effective Date shall be equal to the Allowed Tax Ease Claim. As of the Effective Date such amount shall constitute the "principal sum" under the Promissory Note.

3.Notwithstanding section 2 of the Promissory Note, on the first day of each calendar month following the Effective Date and continuing for a period of eleven (11) successive months (i.e. for a total of twelve (12) payments), the Debtor shall make payments of interest only on the amount then due and owing under the Promissory Note.

4.Notwithstanding section 2 of the Promissory Note, on the first day of the thirteenth calendar (13th) month following the Effective Date, and continuing for a period of one hundred nineteen (119) successive months (i.e. for a total of one hundred twenty (120) additional payments), the Debtor shall

Case 10-32308   Document 109   Filed in TXSB on 01/25/11   Page 19 of 24

make equal principal and interest payments necessary to fully amortize all amounts then due and owing under the Promissory Note over a one hundred twenty (120) month period.

Tax Ease shall retain all its liens pursuant to the Security Documents on Debtor's property in its current lien priority to secure repayment of amounts to be paid to Tax Ease under the Promissory Note and this Plan. All provisions of the Promissory Note (including the applicable interest rate) and the Security Documents shall remain in full force and effect except as modified by this Plan. The Class 4 Creditor is impaired under this Plan

2.**Class 5.  Secured Claim of Paula Angenendt.**  Class 5 consists of the secured claim of Paula Angenendt. The claim of Angenendt is $168,000.  The Debtor will pay interest only on the Class 5 claim for a period of ten (10) years starting two years after the Effective Date with interest at three percent (3.0%) per annum.[6]  The monthly payments starting two years after the Effective Date will be $420.  The first payment will be due on the last day of the second month two years after the Effective Date.  After ten years of interest only payments, the principal amount will be due and payable. The Class 5 creditor has further agreed that payments on her claim shall be subordinated to payments to Classes 2, 3, and 4.  The payments to Classes 2, 3 and 4 must be fully paid and not in default prior to any payments on Class 5. Upon a sale or refinancing of the Property, the Class 5 claim shall be paid.  Class 5 is impaired.

3.**Class 6.  Priority Claim of Internal Revenue Service.**  Class 6 consists of the unsecured priority claims of the Internal Revenue Service ("IRS").  The Debtor did not have employees during the time period in the proof of claim of the IRS.  As a result, the Debtor does not believe that any amounts are owed to the IRS.  The Debtor will object to the claim of the IRS.  If the Debtor is not successful in its objection, the Debtor will pay the amounts to the IRS as provided in the Bankruptcy Code.

4.**Class 7.  Unsecured Claims.**  Class 7 consists of the unpaid pre-petition Allowed Unsecured Claims against the Debtor, excluding insider claims.  The Debtor has scheduled unsecured claims of approximately $212,681.  The Debtor estimates that the allowed unsecured claims may be

---

[6]

No payments will be made to Ms. Angenendt during the first and second year. Interest to Ms. Angenendt will accrue for the first and second year and be paid at the end of the ten years.

Case 10-32308   Document 109   Filed in TXSB on 01/25/11   Page 20 of 24

approximately $125,000. The estimated amount is based on the Debtor's schedules, the proofs of claims currently filed in the case, and the Debtor's estimates on contested claims. Class 7 claims will be paid over an eight year period. The payments will be made as follows: year 1 - $0; years 2 - 5 at $5,000 per year and years 6 - 8 at $6,000 per year. Class 7 claims will be paid semi-annually starting six months after the Effective Date and continuing on the same semi-annual schedule until paid. The payments will result in a distribution to unsecured creditors of approximately 30% of the allowed unsecured claims.

Class 7 is impaired.

5. **Class 8.  Convenience Class.** Class 8 consists of any claim in which the creditor elects to accept payments in the lesser amount of the following: (1) the amount of the creditors' claim, or (2) $100. Creditors who elect to be treated in this class shall be paid in full for the Class 8 claim amount within 180 days of the Effective Date. Creditors must make an election to be included in this class when the creditor votes on this plan.

6. **Class 9.  Equity Interests**. Class 9 consists of the equity interest in the Debtor. Arnold and Salas will retain their equity interests in the Debtor subject to the Debtor's obligations under the Plan.

Class 9 is impaired.

## ACCEPTANCE OR REJECTION OF PLAN

Each impaired class of Claims shall be entitled to vote separately to accept or reject this Plan unless that class receives no distribution under the Plan. Any class receiving no distribution is deemed to have rejected the Plan. Any unimpaired class of Claims shall not be entitled to vote either to accept or to reject this Plan and is deemed to have accepted the Plan. Each creditor should read this plan and disclosure statement, then complete and return the attached ballot.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by Creditors and holders of interests, at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting and fifty-one percent (51%) in number of Allowed Claims voting in each Class of Claims must accept the Plan. Whether or not you expect to be present at the hearing, you are urged to fill in, date, sign, and properly mail the Ballot for Accepting or Rejecting Plan of Reorganization to Mr. Reese W. Baker, Attorney for Debtor, 5151 Katy Freeway, Ste 200, Houston,

Texas 77007.

IF ANY CLASS REJECTS THE PLAN, THE DEBTOR MAY SEEK TO "CRAMDOWN" THE CONFIRMATION OF THE PLAN PURSUANT TO 11 U.S.C. § 1129(b). THE BANKRUPTCY CODE ALLOWS THE DEBTOR TO REQUEST THE COURT TO CONFIRM THE PLAN NOTWITHSTANDING THE REJECTION OF ANY CLASS OR CLASSES OF CREDITORS IF THE DEBTOR CAN DEMONSTRATE THE (I) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND (ii) THE PLAN IS FAIR AND EQUITABLE WITH RESPECT TO EACH CLASS OF CLAIMS OR INTERESTS THAT IS IMPAIRED AND HAS NOT ACCEPTED THE PLAN. IN ORDER TO "CRAMDOWN" THE PLAN, THE DEBTOR WILL HAVE TO DEMONSTRATE TO THE BANKRUPTCY COURT AT A HEARING THAT THESE TWO STANDARDS HAVE BEEN SATISFIED. SUCH HEARING WOULD BE PART OF THE CONFIRMATION HEARING ON THE PLAN AND ALL CREDITORS MAY BE PRESENT AND WOULD HAVE AN OPPORTUNITY TO PARTICIPATE IN SUCH HEARING.

### EXECUTORY CONTRACTS

Upon confirmation of this Plan, the Debtor shall be deemed to have assumed the following executory contracts:

1. Property management agreement with Stockett Properties.

2. Tow Truck agreement

3. Republic Waste - trash management

4. Merlin Law Group - claims against insurance company; law firm representing the Debtor. Funds for payment to Merlin Law Group are held by Reliance Bank.

5. Coinmach - laundry service at the Property

All other executory contracts and leases are deemed rejected by the Debtor as of the Effective Date.

## JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain exclusive jurisdiction of the case after the Confirmation Date with respect to Claims, applications, orders, damages, and other events as described in the Plan.

## EFFECT OF CONFIRMATION.

As provided for in § 1141 of the Bankruptcy Code, the provisions of Debtor's Plan shall bind the Debtor and any creditor under the Plan, whether or not the claim of the creditor is impaired under the Plan and whether or not the creditor has accepted the Plan. As provided for in § 1141(b) of the Bankruptcy Code, confirmation of Debtor's Plan vests all of the property of the estate in the Debtor. After confirmation of the Debtor's Plan, all property of the Debtor dealt with by the Plan (which includes all property of the Debtor) is free and clear of all liens, claims, and interests of creditors and equity security holders, except to the extent provided in this Plan.

The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon from and after the petition date, against Debtor and Debtor in Possession, or any of its assets or properties. Except as otherwise provided herein, upon the Effective Date, in accordance with Section 1141 of the Code, all such claims against Debtor and Debtor in Possession shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all creditors shall be precluded from asserting against Debtor any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature occurring on or prior to the confirmation date. Confirmation shall not affect any claims against Watson by Reliance or any other entity. Confirmation of this plan shall not release Watson from any claims of Reliance, the Debtor, Arnold, Angenendt or other entities existing prior to the filing of this bankruptcy case.

## DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

The Debtor may file an objection to any disputed Claim within thirty (30) days from the Effective Date of the Plan. Objections not filed within the foregoing time period shall be deemed waived, except to the extent that the grounds for the objection could not have been discovered prior to the expiration of the thirty (30) day time period. If an objection is filed to any claim, payments

on the claim will not begin until after an Order of the Court allowing the claim has become final.

## FEASIBILITY TO PERFORM AND IMPLEMENTATION OF THE PLAN

The Debtor believes this Plan is feasible.   The Debtor will continue to operate its business. The Debtor believes that its revenues should produce sufficient funds to pay all administrative, allowed secured claims, and allowed unsecured claim as provided in the plan.  The main source of funding of the Plan will be from rental income of the Debtor.

Payments under this Plan shall start on the first full month after the Effective Date.

## FINANCIAL INFORMATION FILED WITH THE COURT

A.      Statement of Financial Affairs

B.      Schedules A thru H, and Summary of Schedules (Schedules D, E and F attached)

C.      Monthly Operating Reports

PLEASE BE ADVISED THAT THE FINANCIAL INFORMATION ENUMERATED IN SUBPARAGRAPHS A THROUGH C ABOVE IS AVAILABLE IN THE CLERK'S OFFICE OF THE UNITED STATES BANKRUPTCY COURT, 515 RUSK, HOUSTON, TEXAS.

## EXHIBITS

A.      Profit projections and payments for three (3) years following the Effective Date

B.      Monthly Operating Reports for the two months prior to the date of this Plan

C.      Liquidation analysis under Chapter 7

D.      Summary of Claims Scheduled by the Debtor - Schedules D, E and F attached

E.      Rents received from each apartment unit on the Property, the rent rates for each apartment unit and the Property's occupancy rates for the months of October and November 2010 and projected rental rates after completion of repairs.

F.      Debtor's 2009 Tax Return and net income from operations for 2009.


[THE REMAINDER OF THE PAGE IS INTENTIONALLY LEFT BLANK]

Case 10-32308   Document 109-1   Filed in TXSB on 01/25/11   Page 24 of 24

Respectfully submitted January 24, 2011

<div style="margin-left: 40%;">

4506 SHERWOOD LANE, LLC

*/s/ Gary Arnold*

By:  _____

Gary Arnold, its Managing Member

</div>

ATTORNEY FOR THE DEBTOR:

By:   */s/ Reese W. Baker*
      Reese W. Baker / TX Bar No. 01587700
      5151 Katy Fwy, Ste 200
      Houston, Texas  77007
      713-869-9200
      713-869-9100 (Fax)

      Counsel for the Debtor has made
      no independent investigation of the
      information contained herein.